# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE BELL, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-5967 |
| | : | |
| PENNSBURY SCHOOL DISTRICT | : | |
| and GARY M. CAMPBELL, | : | |
| Defendants | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                January 31, 2011

      The plaintiff in this case, Wayne Bell, filed suit on behalf of his son, Blayre, after Blayre was removed from the rolls of the Pennsbury School District for not being a resident of the District. Mr. Bell asserts that, in removing Blayre, the School District and School District attendance officer Gary Campbell violated the equal protection clause and the substantive and procedural due process components of the Fourteenth Amendment. The defendants have filed a motion for summary judgment, and for the reasons set forth below, I will grant the motion in its entirety and enter judgment in favor of the defendants, the Pennsbury School District and Gary M. Campbell.

**I. BACKGROUND**[1]

Wayne Bell ("Mr. Bell") and Linda Carmona-Bell ("Mrs. Bell") are the parents of Blayre Bell ("Blayre"). They live in separate homes but remain married. There has never been a court order addressing the custody of Blayre. Mrs. Bell's home is in the Bristol Township School District, and Mr. Bell's is in the Pennsbury School District ("School District"). Blayre Bell has lived with his mother in her Bristol Township home for his "whole life" and, though he has the option of staying with either parent, he sleeps at his mother's home more often than he sleeps at his father's home. Blayre Bell Dep. 5:2-3, 8:23-10:14. In June of 2008, Mr. Bell enrolled Blayre in the Pennsbury School District for the 2008-2009 school year. Although Mr. Bell did not have the appropriate proof of residence forms when he registered Blayre, the School District enrolled Blayre nonetheless. Because Mr. Bell did not have all required forms when he registered Blayre, Blayre was placed on a watch list for students who were suspected of not being residents of the District. Attendance officer Gary Campbell began investigating whether Blayre was a resident about a month after classes began in the fall of 2008, and determined that

---

[1] In contravention of this Court's policies and procedures, the plaintiff failed to file a response to the statement of undisputed material facts filed by the defendants in support of their motion for summary judgment. Instead of writing a statement of facts in its response to defendants' motion, plaintiff simply repeated, verbatim and complete with paragraph numbers, the allegations in his complaint. Therefore, this background is adopted from the statement of undisputed material facts filed by the defendants.

Blayre was living at Mrs. Bell's home in Bristol Township.[2]

Campbell sent a certified letter to Mrs. Bell on November 6, 2008, informing her that Blayre would be dropped from the rolls of the District effective November 14, 2008. She received the letter on Saturday, November 15, and then left a message for Campbell that he would have to call Mr. Bell regarding Blayre's position in the School District. Campbell called Mr. Bell on Monday, November 17, 2008 and told him that he had observed Blayre going to and from Mrs. Bell's over a two week period. He also allegedly told Mr. Bell that Blayre was easy to spot because he could "see his Afro a mile away." Compl. ¶ 17. Blayre is African American.

Blayre attended school on November 17 and November 18, 2008. On November 17, he was invited to and attended a meeting with Campbell and Assistant High School Principal Dan File. He was told that he had been observed going to and from his mother's home and was asked questions about where he was living at the time. See Blayre Bell Dep. 7:14-22. He did not deny during that meeting that he lived with his mother. On November 18, 2008, Mr. Bell was invited to and attended a meeting with Campbell and Sherwood Taylor, another school official. Mr. Bell was told at that meeting that he needed custody papers for Blayre to be properly registered in the Pennsbury School District. Mr. Bell got up and walked out of that meeting after a few

---

[2] Mr. Campbell observed Blayre over a two week period and on each of the eight occasions he followed Blayre during that period, he saw him go to Mrs. Bell's home after school. He never observed Blayre go to Mr. Bell's home. It was on the basis of these observations that he concluded Blayre was residing with his mother outside Pennsbury School District.

minutes. Mr. Bell did not dispute that Blayre was living with his mother during the November 17 phone call or the November 18 meeting. Mr. Bell testified that during the November 17, 2008 phone call, no one asked him anything about Blayre's residence or gave him a chance to explain the circumstances of Blayre's residency, other than to tell him that Blayre was going to be removed from the School District. He testified that, during the November 18 meeting, he did not have the chance to explain Blayre's residency and that Campbell and Taylor told him that there was no appeal process in which he could contest the District's ruling. Wayne Bell Dep. at 8-11.

However, on November 19, 2008, a School District official hand-delivered a letter to Mr. Bell confirming its decision to remove Blayre from its rolls, explaining the basis for this decision, and informing Mr. Bell that he had the right to appeal the decision to the Pennsbury School Board President within five days and receive a hearing. Mr. Bell did not appeal. He testified that despite the clear language in the letter informing him of his appeal rights, he believed he had no such rights because of what Campbell and Taylor told him during their meeting. Wayne Bell Dep., 10:18-11:4.

Instead, he filed a federal complaint in December of 2008, later dismissing it to pursue a hearing before the School Board. That hearing was held on May 27, 2009; the School District and the Bells were each represented by counsel. Counsel for the School District called Campbell and Taylor as witnesses and then attempted to call Mr. Bell, Mrs. Bell, and Blayre. Through counsel, all three refused to testify, invoking a Fifth

Amendment privilege. The School Board issued a decision on June 18, 2009, finding that Blayre resides with Mrs. Bell, who is not a resident of the School District, and that he had been properly removed as a student.

Following the hearing, Mr. Bell filed a second federal suit which is now before the Court. His first and second causes of action are both asserted against the School District, and liberally construing these causes of action, he asserts three claims pursuant to 42 U.S.C. § 1983: an equal protection claim based on the School District's removal of Blayre on the basis of his race, a substantive due process claim, and a procedural due process claim. His third cause of action, filed against Gary Campbell, asserts the same three claims.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

## III. DISCUSSION

"Section 1983 . . . does not create substantive rights, but provides a remedy for the violation of rights created by federal law." Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). It imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).

### A. Equal Protection Claims

In Count I of the complaint, Mr. Bell alleges the School District "impermissibly [allowed] race to enter into the decision to dismiss [Blayre]" from the District and that it treated him differently from other students because of his race. Compl. ¶ 24. He asserts that these actions violated Blayre's rights under 42 U.S.C. § 1983. Id. He further claims that Blayre is entitled to damages as a result of "discriminatory policies." Id. at ¶ 25. In Count III, the plaintiff alleges that Gary Campbell, acting under color of state law, violated Blayre's civil rights by terminating him from the School District because of his race.

When a plaintiff asserts a Section 1983 claim alleging race discrimination without specifying the constitutional basis for that claim, it is proper to construe the plaintiff's cause of action as one under the equal protection clause of the Fourteenth Amendment.[3] See Bradley v. Pittsburgh Bd. Of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990). "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they 'received different treatment from that received by other individuals similarly situated.'" Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992) (citing Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990)). To move forward with his Section 1983 equal protection claim, then, Blayre must demonstrate that he received disparate treatment

---

[3] The Fourteenth Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

and that it was due to his race.

### 1. Equal Protection Claims Against the School District and Against Gary Campbell in His Official Capacity

To state a cause of action against the School District under § 1983 for a school official's deprivation of his constitutional rights, Mr. Bell must show that Blayre's injury resulted from an "official custom or policy"[4] of the school district, which was a driving force behind its or an official's actions. Monell v. Dep't of Soc. Serv. Of City of New York, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, Mr. Bell must plead and prove that: (1) there was a violation of Blayre's constitutional rights pursuant to an official policy, custom, or practice; and (2) the School District's policy or custom caused the violation. Id. Absent unusual circumstances, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incidents includes proof that it was caused by an existing, unconstitutional municipal policy" attributable to a municipal policymaker. Turner v. City of Phila., 22 F. Supp. 2d 434, 437 (E.D.Pa. 1998) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-23, 105 S.Ct. 2427, 85 L. Ed. 2d 791 (1985)).

Mr. Bell has presented absolutely no evidence that the School District had or was

---

[4] "Policy is made when 'a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L. Ed. 2d 452 (1986) and Monell, 436 U.S. at 690, 98 S.Ct. at 2035).

aware of a custom, policy, or past practice of removing students from the District on the basis of their race, or that such a custom or policy was the moving force behind Blayre's dismissal as a non-resident. Mr. Bell's complaint asserts that Blayre's rights were violated as the result of "discriminatory policies" but does not attempt to identify any specific policies in effect at the time Blayre was dismissed. This allegation is clearly based on a single incident in which Blayre was allegedly removed from the School District on the basis of his race. Neither has Mr. Bell presented any evidence to defeat the defendants' motion for summary judgment. He has offered no proof in the form of depositions, school policy manuals, or evidence of other incidents of racial discrimination in the removal of students tending to show that the School District ordered, acquiesced in, or was even aware of discriminatory behavior on the part of Campbell or any other official. His section 1983 equal protection claim against the School District must be dismissed.

For the same reason, Blayre's equal protection claim against Gary Campbell in his official capacity must be dismissed. Suits against municipal employees in their official capacities are "treated as claims against the municipal entities that employ these individuals." Smith v. School Dist. of Phila., 112 F.Supp.2d 417, 424-25 (E.D.Pa.2000) (citing Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). In a suit against a municipal official in his official capacity, the real party in interest is the municipal entity and not the named official. See id. at 424. Because Mr. Bell's claim

against the School District must be dismissed, so must his claim against Gary Campbell in his official capacity.

### 2. Equal Protection Claim Against Gary Campbell In His Individual Capacity

Mr. Bell has also failed to support the equal protection claim he asserts against Gary Campbell in his individual capacity. To maintain this claim, he must present some evidence creating a genuine dispute whether Campbell treated Blayre differently than he treated similarly situated students, and did so on the basis of Blayre's race.

Mr. Bell fails to present evidence of differential treatment on summary judgment. He has set forth no evidence that Campbell either did not investigate white students as potential non-residents or did not attempt to remove white students upon finding that they were non-residents. He points to no testimony from Campbell or any other individual indicating that Campbell treated black students different from white students. He states, in support of this claim, that Campbell's comment to Mr. Bell that Campbell could spot Blayre's Afro a mile away "speaks for itself." Pl.'s Resp., 10. It does not. With no evidence of differential treatment presented, and the only evidence of discriminatory animus a stray remark referring to Blayre's hair as an "Afro," Mr. Bell's equal protection claim against Campbell in his individual capacity must be dismissed.

### B. Due Process Claims

The Fourteenth Amendment prohibits deprivations "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Nicholas v. Penn. State

Univ., 227 F.3d 133, 140-43 (3d Cir. 2000), sets forth the distinction between substantive due process rights and procedural due process rights. In essence, the former are "fundamental" under the constitution, and are limited, while the latter are state-created. See id. Mr. Bell asserts Blayre's due process claims against both the School District and Gary Campbell. Because he does not attempt to differentiate between the actions of the School District and Campbell for purposes of these claims, I will discuss them in tandem.

1. **Substantive Due Process Claim**

There is no fundamental right to a public education recognized under the Constitution. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 37, 93 S.Ct. 1278, 36 L. Ed. 2d 16 (1973). Therefore, government infringement on a student's property right to a free public education is subject to rational basis review under the due process clause. See M.G. v. Crisfield, 547 F. Supp. 2d 399, 408-09 (D.N.J. 2008); Brian A. v. Stroudsburg Area Sch. Dist., 141 F. Supp. 2d 502, 510 (M.D.Pa. 2001). "In the context of school discipline a substantive due process claim will succeed only in the 'rare case' when there is 'no rational relationship between the punishment[5] and the offense.'" Brian A., 141 F. Supp. 2d at 510 (quoting Seal v. Morgan, 229 F.3d 567, 574-75 (6th Cir. 2000)).

Mr. Bell blithely argues that relevant Pennsylvania regulations concerning the

---

[5] Plaintiffs characterize Blayre's removal from the rolls of Pennsbury School District as an expulsion, and therefore, as a punishment.

residency of minor students do not apply in Blayre's situation because he "lives with both his parents." Pl.'s Resp., 15. He claims that, due to Blayre's "dual residency," School District officials should not have applied relevant school residency regulations in his case. Pennsylvania law provides that "[a] child shall be considered a resident of the school district in which his parents or the guardian of his person resides." 24 PA. STAT. ANN. § 13-1302(a). It further provides that "[w]hen the parents reside in different school districts due to separation, divorce *or other reason*, the child may attend school in the district of residence of the parent with whom the child lives for a majority of the time[.]" 22 PA. CODE § 11.11(a)(1) (emphasis added). Pennsylvania courts have construed relevant law to mean that, for schooling purposes, a student simply cannot have two residences. See Lushen v. Peters Twp. Sch. Dist., 65 Pa. D. & C.2d 712, 714, 1974 WL 15505 (Wash. Co. Mar. 4, 1974) (finding that interpreting Section 13-1302 to allow a student to have two residences would "cause so many undesirable consequences as to render such an interpretation absurd."); In re Huck/Fossleitner Appeal, 435 Pa. 325, 334, 257 A.2d 522 (Pa. 1969) *cert. denied* 397 U.S. 1040, 90 S.Ct. 1360, 25 L. Ed. 2d 651 (1970)); Mathias v. Richland Sch. Dist., 140 Pa.Cmwlth 298, 301, 592 A.2d 811 (Pa. Cmwlth. 1991).

Although the living arrangement between Mr. and Mrs. Bell may not qualify as a divorce or separation, this does not mean that clear law requiring that a student have one residence for school purposes does not apply here, or that the School District needed some proof of divorce or separation to find that Blayre resided with his mother. Even if

the Bells are not divorced or separated, their situation falls under Code language applying the single residency rule where the parents have different homes because of separation, divorce, or "other reason." Because Blayre stated that he lived with his mother and had for his entire life, and sleeps the majority of the time at her house, school officials had a rational basis to find that he resides with her for school enrollment purposes. Therefore, his substantive due process claim fails as a matter of law.

2.  **Procedural Due Process Claim**

The Fourteenth Amendment also provides procedural protections before a person may be deprived of a state-created property right. "Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." Shuman ex rel Shertzer v. Penn Manor Sch. District, 422 F.3d 141, 149 (3d Cir. 2005) (citing Goss v. Lopez, 419 U.S. 565, 572-73, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Under Pennsylvania law, Blayre is entitled to a free public education.[6] Therefore, although the School District did not violate his substantive due process rights in finding that he was not a resident, it was still required to afford him appropriate procedural protections before removing him from its rolls on this basis.[7] See Horton v.

---

[6] The Pennsylvania Administrative Code provides that "[e]ducation is a statutory right, and students must be afforded all appropriate elements of due process if they are to be excluded from school." 22 PA. CODE § 12.8(a).

[7] At least one other court has found that, where there is no factual dispute whatsoever concerning a student's status as a non-resident of the district, procedural due process is not

Marshall Public Schools, 769 F.2d 1323, 1333 (8th Cir. 1985) (affirming District Court's finding that students were entitled to procedural due process protections before being removed from District rolls because of their non-resident status).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 96 S.Ct. 893, 47 L. Ed. 2d 18 (1976) (internal citation omitted). A student facing suspension from school for a term of ten days or less is afforded adequate due process when he receives oral or written notice of the charges against him, an explanation of the evidence, and an opportunity to present his side of the story. See Goss, 419 U.S. at 581; Brian A., 141 F. Supp. 2d at 508. This level of process is meant to be workable in the day-to-day school environment, and is satisfied without formal notice or a formal hearing. See e.g., Jarmon v. Batory, No. 94-0284, 1994 WL 313063 at *6 (E.D.Pa. June 29, 1994). Where a student is at risk of a longer term of suspension or of expulsion, the Fourteenth Amendment requires more in the way of process. Id.; Brian A., 141 F. Supp. 2d at 509.

In considering whether sufficient process was afforded before deprivation of a property interest, courts follow the framework set forth in Mathews, under which the following factors must be weighed: (1) the private interest that will be affected by the

---

required, as there is no legitimate entitlement to a free public education in that district. See G.C. v. Owensboro, No. 09-CV-102, 2009 WL 3834096 at *3 (W.D. KY Nov. 16, 2009). However, where a student's status as a resident is a question of fact, and the student therefore *may* have a protected property right in the district in which he seeks to attend school, procedural due process must be afforded. See D.L. v. Unified Sch. Dist. No. 497, 270 F. Supp. 2d 1217, 1259-1260 (D.Kan. 2002) vacated on other grounds 2002 WL 31253740 (D.Kan. Oct 4, 2002).

official action; (2) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 220 (3d Cir. 2009) (citing Mathews, 424 U.S. at 335, 94 S.Ct. 893).

Defendants claim Blayre received meaningful process before he was removed from the rolls of Pennsbury School District.  The evidence shows that School District officials (1) sent Mrs. Bell, who was believed to be his custodial parent, a letter before removing him from the rolls; (2) did not send Mr. Bell, the parent who registered Blayre, the same letter; (3) allowed Blayre to attend school on November 17 and 18, 2008; (4) contacted Wayne Bell by telephone on November 17, and had an in-person meeting with him on November 18, on both occasions discussing the reasons for Blayre's removal; (5) questioned Blayre about his residency status during an in person meeting on November 17; (6) removed Blayre from its rolls on November 18; (7) delivered to Mr. Bell a letter detailing the history of his communications with the District and advising him that he had five days to appeal the District's decision before the School Board.  Mr. Campbell testified that the decision to remove Blayre from the rolls of the School District was not set in stone at the time he began communications with Blayre's parents; rather, he stated that parents whose children are suspected of not being district residents are given an

opportunity to respond. Campbell Dep. 34:11-15. He also testified that, during his conversations with Blayre and Mr. Bell, neither ever indicated that Blayre was living with his father and that Blayre specifically stated that there was no chance of him moving to his father's house. Id. at 40:14-25. Blayre, Mr. Bell, and Mrs. Bell had the opportunity to contest the version of events given by Mr. Campbell during the hearing eventually conducted before the school board, and refused to do so.

Blayre's interest in obtaining a free public education is great. However, since it is clear that Pennsbury's removal of him from its rolls did not affect his opportunity to attend public school in Bristol Township,[8] I believe the court cannot fairly compare this situation to one where a student's expulsion from public school prevents that student from attending public school at all. In other words, because Blayre continues to receive a free public education in Bristol Township, his interest in attending Pennsbury is not as great as it would be if Pennsbury were the only district in which he could attend public school for free. See Blayre Bell Dep. 5: 4-13.

Against Blayre's interest must be balanced the interest of the School District in ensuring that it does not provides free public education to students whose families do not reside in its District. All school districts will naturally have an interest in determining the proper residency of potential students so that there is finality as to each student's status on issues concerning, for example, age limits, rights to school privileges, assignments to

---

[8] Blayre testified that he currently attends high school in Bristol Township, the township in which Mrs. Bell resides. Blayre Bell Dep. 5:4-13.

proper schools, enforcing attendance, and determining liability for free transportation and school meals. See Lushen, 65 Pa. D. & C.2d at 714.

Finally, the court must consider the risk of an erroneous deprivation of Blayre's right to a free public education through the procedures used and the probable value, if any, of additional or substitute procedural safeguards. The risk of erroneous deprivation here is fairly low. The school sent a letter to the parent who Mr. Campbell believed was the custodial parent of Blayre based on his direct observations. After being informed that Mr. Bell, and not Mrs. Bell, should have been contacted regarding Blayre's position as a student in the district, Mr. Campbell spoke to Mr. Bell, both on the phone and in person. Mr. Bell argues that, because he and Mr. Campbell present different versions of the content of their conversations, there is a genuine issue of fact whether Blayre received notice and an opportunity to be heard before he was ultimately removed from School District rolls. However, it is undisputed that Mr. Bell and Mr. Campbell spoke on two separate occasions, and that both times, the School District informed Mr. Campbell that it intended to remove Blayre from its rolls because he was living primarily with his mother. There is no genuine dispute that Mr. Bell had two opportunities to explain, if he could have, that Blayre resided with him a majority of the time. Further, it is clear that, during their in-person meeting, Mr. Bell walked out, refusing to participate further. The School District's effort to hear Mr. Bell's version of the story resulted in Mr. Bell walking out of the meeting, and then failing to act on his opportunity to contest its decision, which was

set forth in the letter he received following the meeting. This evidence supports the School District's assertion that it did all it could to afford Mr. Bell the opportunity to be heard. More importantly, the evidence does not show that, had the School District afforded Mr. Bell and Blayre *more* in the way of process, the outcome would have been different. Mr. Bell does not claim that Blayre spent the majority of his time with him and presumably would not have made this claim during further administrative procedures. He refused to comment on Blayre's status at the hearing conducted in May of 2009.

Therefore, while it is not clear that the District did everything in its power to ensure that the Bells were given the full panoply of procedures available prior to removing Blayre from District rolls, there is no genuine dispute that the District met its minimal duty to provide a hearing at a meaningful time and in a meaningful manner. Balancing the interests of the two parties involved, it is not clear that either Blayre or the School District had a significantly greater interest than the other. More importantly, the School District afforded both Blayre and Mr. Bell face-to-face meetings to explain Blayre's residency status and the results of those meetings shows that there is little likelihood that additional procedural safeguards would have resulted in a different outcome. Mr. Bell has failed to present evidence in support of his claim creating a genuine dispute whether Blayre's procedural due process rights were violated. Therefore, I will grant the defendants' motion for summary judgment on this claim.

## IV. CONCLUSION

For the reasons set forth above, I will grant defendants' motion for summary judgment. An appropriate order follows.